UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

PAUL STERLING,

         Plaintiff,

v.

MERCANTILE ADJUSTMENT BUREAU, LLC.,

         Defendant.
_____

**REPORT AND RECOMMENDATION**

11-CV-00639(A)(M)

    On July 28, 2011 plaintiff commenced this action against defendant Mercantile Adjustment Bureau, LLC ("MAB"), alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§1692, *et seq*. and the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §227 (complaint [1]).[1] Plaintiff's FDCPA claims having been resolved,[2] both parties have now moved for summary judgment on the issue of liability under the TCPA [34, 35]. Those motions, being dispositive, have been referred to me by Hon. Richard J. Arcara for a Report and Recommendation [14]. For the following reasons, I recommend that summary judgment be granted to plaintiff, and denied to MAB.

**BACKGROUND**

    The material facts are undisputed. *See* Joint Statement of Uncontested Material Facts [33]. Plaintiff is the subscriber assigned to a cellular telephone number previously held by a debtor ("Jane Doe"), who had provided the number to Mercy Hospital as a contact number in connection with her account for treatment (id., ¶¶1, 2, 8, 11). When her account became

---

[1]   Bracketed references are to CM/ECF docket entries.

[2]   *See* Notice of Acceptance of Offer of Judgment [26].

delinquent, it was placed with MAB for collection, and the hospital provided MAB with the cellular contact number (id., ¶¶3, 6). MAB called the number to collect the debt, but never spoke to the debtor (id., ¶7). After MAB had begun calling the number, it was recycled and reassigned to plaintiff, without MAB's knowledge (id., ¶¶8, 9).

Thereafter, MAB placed 17 calls to the number, using an "automatic telephone dialing system" as defined by the TCPA (id., ¶¶12, 13). These calls were made with the prior express consent of Jane Doe (the debtor), but without plaintiff's consent (id., ¶¶14, 15). Plaintiff neither spoke to MAB nor asked it to stop calling the number (id., ¶16), and once MAB learned that the number had been reassigned (after plaintiff commenced this action), it ceased placing calls to the number (id., ¶¶9, 10, 18).

In relevant part, the TCPA prohibits calls to a cellular telephone phone using an automatic dialing system, "other than a call made . . . with the prior express consent of the called party". 47 U.S.C. §227(b)(1)(A)(iii). Although the statute defines several terms (§227(a)), it does not define "the called party". MAB argues that "this case does *not* require the Court to interpret the phrase 'called party'. This case is *not* about whether there was initial prior express consent - plaintiff has stipulated that there was such initial prior express consent. Instead, this case is about whether prior express consent can be tacitly withdrawn or revoked without any notice to the caller." MAB's Memorandum in Opposition to Plaintiff's Cross Motion for Summary Judgment [36], pp. 2-3 (emphasis in original).[3]

---

[3] While initially suggesting that the TCPA does not apply to the calls at issue because they were made for purposes of debt collection rather than telemarketing (MAB's Memorandum in Support of Motion for Summary Judgment [34-2], p. 6), "[f]or purposes of its summary judgment motion only", MAB "assume[s] that the TCPA may be applicable" (id.). MAB's premise that the TCPA does not apply is doubtful. *See* Gager v. Dell Financial Services, LLC, 727 F.3d 265, 273 (3rd Cir. 2013) ("there is no . . . debt collection exemption that applies to autodialed calls made to cellular phones").

Plaintiff, by contrast, argues that "[t]he TCPA's 'prior express consent' defense requires consent of the 'called party', *i.e.*, the current subscriber of the number actually called". Plaintiff's Memorandum of Law [35-2], p. 3.

**ANALYSIS**

It is well settled that "a statute must be construed to give effect, if possible, to every clause and word". Nwozuzu v. Holder, 726 F.3d 323, 328 (2d Cir. 2013). The defense at issue requires not merely "prior express consent", but "prior express consent *of the called party*". 47 U.S.C. §227(b)(1)(A)(iii) (emphasis added). Therefore, the fact that MAB had the prior express consent of the debtor is relevant only if she was "the called party" at the time the calls were made.

MAB bears the burden of proof on that issue. *See* Breslow v. Wells Fargo Bank, N.A., 857 F.Supp.2d 1316, 1319 (S.D.Fla. 2012) ("the prior express consent exemption acts as an affirmative defense, and the burden will be on the creditor to show it obtained the necessary prior express consent"). Therefore, unless MAB can demonstrate that Jane Doe (whose consent it obtained) is the "called party" referred to in §227(b)(1)(A)(iii), plaintiff is entitled to summary judgment. *See* Virgin Atlantic Airways Ltd. v. British Airways PLC, 257 F.3d 256, 273 (2d Cir. 2001) ("summary judgment must be granted where a party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial").

MAB argues that "[t]he TCPA consent defense should apply if the caller had the consent of either the 'subscriber', 'actual recipient of the call,' ***or*** the 'intended recipient of the

call'" (MAB's Opposing Memorandum of Law [36], pp. 7-8) (emphasis in original). Since it is undisputed that at the time of the calls Jane Doe was neither the "subscriber" to the cellular telephone number nor the "actual recipient" of the calls, the critical question here is whether, as the "intended recipient" of the calls, she can be considered the "called party" under the TCPA.

In interpreting ambiguous statutory language (such as "the called party"), I may consider "the particular evils at which the legislation was aimed". Apex Hosiery Co. v. Leader, 310 U.S. 469, 489 (1940). "The problem is to find a reasonable interpretation of the language used in light of the Congressional findings", United States v. Harbin, 313 F.Supp. 50, 51 (D.C.Ind. 1970), which are "entitled to a great deal of deference". Walters v. National Association of Radiation Survivors, 473 U.S. 305, 330 n. 12 (1985).

"In enacting the TCPA, Congress made several findings relevant here. 'Unrestricted telemarketing,' Congress determined, 'can be an intrusive invasion of privacy.' TCPA, 105 Stat. 2394, note following 47 U.S.C. § 227 (Congressional Findings) . . . . In particular, Congress reported, '[m]any consumers are outraged over the proliferation of intrusive, nuisance [telemarketing] calls to their homes.' Ibid. (internal quotation marks omitted). '[A]utomated or prerecorded telephone calls' made to private residences, Congress found, were rightly regarded by recipients as 'an invasion of privacy.'" Mims v. Arrow Financial Services, LLC, ___U.S.___, 132 S.Ct. 740, 745 (2012).

Thus, the "evil" at which the TCPA was aimed was the "recipients['] . . . invasion of privacy" (id.). Since Jane Doe no longer uses the cellular telephone number at issue, her privacy cannot possibly be invaded by MAB's automated calls to that number, nor could her previous consent excuse the invasion of the *current* user's privacy. See Soppet v. Enhanced

Recovery Co., LLC, 679 F.3d 637, 640-41 (7th Cir. 2012) ("any consent previously given, lapses when Cell Number is reassigned"). Congress found that "[b]anning such automated or prerecorded telephone calls . . . except where the *receiving* party consents to receiving the call . . . is the *only* effective means of protecting telephone consumers from this nuisance and privacy invasion". TCPA, 105 Stat. 2394, note following 47 U.S.C. §227 (Congressional Finding #12) (emphasis added).

In light of that finding, I conclude that MAB may not rely upon the consent of Jane Doe (the intended but not actual recipient of the calls) as a defense to plaintiff's TCPA claims. *See* Breslow, 857 F.Supp.2d at 1322 ("the Court finds that the 'called party' for the purposes of §227(b)(1)(A)(iii) was not Former Customer, but the Plaintiffs. The record does not indicate - and Wells Fargo does not argue - that the Plaintiffs ever gave their express consent to be called, or that they gave the number to Wells Fargo in connection with any transaction. Absent a valid defense, the Court finds that there is no genuine issue of disputed fact that Wells Fargo violated the TCPA. Summary judgment as to liability in favor of the Plaintiffs is appropriate"); Soppet, 679 F.3d at 640 ("The phrase 'intended recipient' does not appear anywhere in §227, so what justification could there be for equating 'called party' with 'intended recipient of the call'?");

This conclusion does not force companies such as MAB to "abandon predictive dialers. Other options remain: Have a person make the first call . . . then switch to a predictive dialer after verifying that Cell Number still is assigned to Customer . . . . Use a reverse lookup to identify the current subscriber to Cell Number . . . . Ask Creditor, who obtained Customer's consent, whether Customer still is associated with Cell Number - and get an indemnity from

Creditor in case a mistake has been made." Soppet, 679 F.3d at 642. "[T]he moral is that companies who make automated calls bear the responsibility of regularly checking the accuracy of their account records or placing intermittent live verification calls." Breslow, 857 F.Supp.2d at 1322.

**CONCLUSION**

For these reasons, I recommend that MAB's motion for summary judgment dismissing plaintiff's TCPA claims [34] be denied, and that plaintiff's motion for summary judgment on liability under the TCPA [35] be granted. Unless otherwise ordered by Judge Arcara, any objections to this Report and Recommendation must be filed with the clerk of this court by December 9, 2013 (applying the time frames set forth in Fed. R. Civ. P. ("Rules") 6(a)(1)(C), 6(d), and 72(b)(2)). Any requests for extension of this deadline must be made to Judge Arcara. A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local Rules of Civil Procedure, written objections shall "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each

objection . . . supported by legal authority", and must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge".  Failure to comply with these provisions may result in the district judge's refusal to consider the objections.

Dated: November 22, 2013

                                                    /s/ Jeremiah J. McCarthy
                                                   JEREMIAH J. MCCARTHY
                                                   United States Magistrate Judge